Uzell Sawyer *vs.* Minneapolis & St. Louis Railway Company.

January 2, 1888.

**Railway Company—Defective Car — Injury to Employe of Another Company.**—The plaintiff was injured in consequence of a defective step-ladder on one of defendant's freight cars. He was not at the time in the service of the defendant, but of another company, which was then using the car in its own business. The car had been sent over the road of the latter company, which connects with that of the defendant, consigned to a point in another state; but, on its return, it was transferred beyond the point of junction at which it should have been returned to defendant, and was loaded with freight consigned to a distant point on such connecting road. *Held*, that the defendant owed no duty to the plaintiff in respect to the condition of the car growing out of contract or otherwise, and that this action cannot be maintained.

Plaintiff brought this action in the district court for Waseca county, to recover damages for injuries caused, on April 8, 1886, by a defective freight car belonging to defendant. The action was tried before *Buckham*, J., and plaintiff had a verdict for $8,000. Plaintiff appeals from an order granting a new trial.

*Lusk & Bunn*, for appellant.

*B. S. Lewis*, for respondent.

VANDERBURGH, J.   One of defendant's cars was loaded with plaster at Fort Dodge, Iowa, and transported over its line to Waseca, in this state, a point of junction with the Winona & St. Peter railroad.   It was consigned to Alma Centre, in Wisconsin, a station on the Green Bay railroad, and was thereupon transferred and taken over the two last-named roads to its place of destination.   On its return trip, it was reloaded with freight, (emigrant movables,) and consigned to Huron, Dakota, over the Winona & St. Peter railroad and Chicago & Northwestern road.   The car was sent out from Waseca, March 15, 1886, and passed through the same place on its return, April 8th. Huron is 260 miles west of Waseca.   The car arrived at Tracy, a point on the Winona & St. Peter road, 135 miles west of Waseca, on the evening of the last-named day.   Winona, Waseca, and Tracy are division stations, where trains are made up and cars inspected and repairs made.   A new train was made up at Tracy for Huron, including the car in question, and the same evening the plaintiff, a brakeman in the employ of the Chicago & Northwestern Railroad Company, was injured while attempting to ascend the ladder of the car.   As he took hold of the second round, it pulled off, and he was thrown between the cars and seriously hurt.   The car was repaired and returned empty, billed from "Huron to Winona," but stopped at Waseca on April 13th, and was then returned to the defendant.   The evidence tends to prove that the round which broke loose had not been securely or properly attached to the body of the car, and that, apparently, when repaired, it had been fastened with a screw, which was fixed in or beside a piece of wood, which, in process of time, ceased to hold it firmly, and the ladder had become unsafe.

At the time of the accident it is clear that the car was not in the service of the defendant.   There is no evidence that its use beyond

and west of Waseca was authorized by defendant. And though railway companies, for convenience or by reason of the urgency of their business, not unfrequently make such use of foreign cars, or cars from connecting lines belonging to other companies, when they get possession of them, yet the evidence fails to show any general custom from which an authority can be implied to retain or divert such cars to a special or general use in their own business, further than is necessary or proper on their return to the place or point of junction whence they may have been taken. The evidence shows that while, from the nature of the case, it is difficult to prevent such use of cars, yet that the owners object to it, and that it is considered "an abuse of a car" to retain it and use it in the business of the bailee on its own lines further than is reasonably necessary in returning it. If the defendant had seasonably regained control of the car, it may be presumed that it would have inspected and repaired the same in due course. It is evident that its liability could not continue indefinitely for defects which might be developed from the faulty construction of cars kept out of its use.

At the time of the accident the car was under the management and control of the company operating it, and not of the defendant. It did not come to the hands of the plaintiff through the agency or by the authority of the defendant, and there is no privity between them. It owed him no duty growing out of contract, and was not bound to furnish him safe instrumentalities. As to the defendant, the plaintiff was a mere stranger. *Winterbottom* v. *Wright,* 10 Mees. & W. 109; *Loop* v. *Litchfield,* 42 N. Y. 351, 358; Thomp. Neg. 227, 237.

There is a class of actions in tort which are maintained on the ground that the wrongful acts or omissions on the part of the defendant are such as are in themselves imminently dangerous to others, and from which a general liability arises to any one for injuries which can be traced as the natural and probable consequences of such acts. *Thomas* v. *Winchester,* 6 N. Y. 397, 402, (57 Am. Dec. 455,) and cases cited; *Smith* v. *New York & Harlem R. Co.,* 19 N. Y. 127, (75 Am. Dec. 305.) But this case evidently does not belong to that class, and the defendant owed no such general duty to the plaintiff or others not in privity with it. *Kahl* v. *Love,* 37 N. J. Law, 5; *Longmeid* v. *Holliday,* 6 Exch. 761; *Collis* v. *Selden,* L. R. 3 C. P. 495. The liability of the

defendant in respect to the condition of its cars did not extend beyond those to whom it owed some duty by reason of its relation to them as master, employer, or carrier. Any other rule would be found impracticable of application in ordinary business operations. *Thomas* v. *Winchester, supra; Kahl* v. *Love, supra.* A new trial was properly granted.

Order affirmed.