JOHN L. MOON, Administrator, *vs.* NORTHERN PACIFIC RAILROAD COMPANY, impleaded, etc.

April 23, 1891.

Railway—Liability to Employe of Connecting Company to which it Delivers Unsafe Car.—Where, as between connecting lines of railway, the corporations controlling them are mutually bound to transport loaded freight-cars over their respective roads, such duty is necessarily subject to proper rules and regulations, and involves mutual obligations, among which is that of due diligence to provide safe cars for delivery to the servants of the company operating the connecting line to which they are transferred, and who would be exposed to danger from their defective or unsafe condition.

Same—Liability of Company Receiving Unsafe Car.—The corporation receiving such cars is also subject to liabilities and duties to its servants growing out of the acceptance, possession, and subsequent use thereof. But the negligence of the latter does not relieve the former from liability for injuries resulting from its own negligence.

**Same—Action against Both Companies by Injured Brakeman.—**
Where a brake upon a freight-car so transferred by the corporation own-
ing it was out of repair and unsafe for use, and the same had not been
inspected with due care before delivery to the servants of a connecting
company, and in consequence of such defect a brakeman was injured
without fault on his part, *held,* that an action would lie for the injury
against the first-named company.

**Same—Questions for Jury.—***Held, also,* that the questions as to the condi-
tion of the brake, the length of time it had been out of repair, and
whether it had been inspected with due care, were properly submitted to
the jury.

Appeal by defendant (impleaded with the St. Paul, Minneapolis
& Manitoba Railway Company) from a judgment of the district court
for Ramsey county, where the action was tried before *Wilkin,* J., and
a verdict of $2,500 was returned against appellant, the jury also find-
ing in favor of the Manitoba Company.

*John C. Bullitt, Jr.,* and *F. S. Kirkpatrick,* for appellant.

*Lovely & Trask,* for respondent.

VANDERBURGH, J.    Plaintiff's intestate, who was a brakeman in
the employ of the St. Paul, Minneapolis & Manitoba Company, was
killed while attempting to set a brake upon a loaded freight-car of
the defendant Northern Pacific Railroad Company, which had been
transferred by the latter to the track of the Manitoba Company in
the village of Morris, in this state, for transportation over the road
of the latter to a point thereon.    There was a traffic arrangement
existing between these two companies, in pursuance of which loaded
freight-cars were mutually transferred and transported over their
respective lines, and cars of the Northern Pacific Company, destined
to points on the Manitoba road, were transferred from its line to a
side track in the yard of the latter company at Morris, designated
and set apart as a transfer track, whence, if in good order, they were
placed in its trains by that company, and transported to particular
stations.    The car in question was loaded with wood to be shipped
to Herman, a station on the Manitoba road a few miles west of Mor-
ris.    When it arrived at Morris, on the 3d day of April, it was placed
on the transfer track in the yard of the Manitoba Company, above

referred to. According to the rule adopted by the companies, such cars were required to be inspected by the car inspectors of both on that track, and, if any repairs were needed, they were required to be made by the Northern Pacific Company before they were transferred and received by the Manitoba Company. Accordingly this car was so inspected by the car inspectors on the morning of April 4th. It was examined by them together at the same time, and they agreed that it was in good order. In the afternoon of the same day, the car was taken off this track by the Manitoba Company, to be placed in a train for transportation, and was switched on to another track, where the conductor ordered the deceased to set the brake on it so as to hold it securely on a descending grade. The brake-staff proved defective, and was insufficient to hold the loaded car in its place, but broke and precipitated him upon the track, and he was run over. It is claimed by the plaintiff that the brake-staff was cracked and partly broken before its use at the time of the injury, and that the defendant Northern Pacific Railroad is liable in damages for negligence in permitting it to be out of repair and unsafe, and also that the car was not properly or carefully inspected by the inspectors of the respective companies, and that the work was superficially and negligently done. The action was brought against both companies, but a verdict was recovered against the Northern Pacific Railroad only.

1. We are to inquire whether the relations of the deceased, as an employe of the Manitoba Company, to the defendant the Northern Pacific Railroad Company were such as to entitle plaintiff to maintain an action against the latter for its alleged negligence. As respects the transportation of freight in bulk from stations on one line to those on the other, the two roads are operated together, and it is immaterial whether such transportation by connecting lines is carried on in obedience to a statute, their common-law duty as carriers, or by mutual agreement; neither company is obliged to draw the cars of the other over its line, if they are unsafe or out of repair. *Mackin* v. *Boston & Albany R. Co.*, 135 Mass. 201; *Gottlieb* v. *New York, L. E. & W. R. Co.*, 100 N. Y. 462, 469, (3 N. E. Rep. 344.) It is, then, the primary duty of the company seeking such transportation to use due diligence to provide cars reasonably safe for the

service contemplated. The rule above referred to, adopted by these companies, requiring the Northern Pacific Railroad Company to inspect and repair cars before transfer and acceptance, is a recognition of this duty. But such duty is not limited to the corporations as such, but extends to and is owed to the servants who must necessarily handle the cars, and who are exposed to danger arising from their unsafe or defective condition. One may owe two distinct duties in respect to the same thing,—one of a special character to one person, growing out of special relations to him; and another, of a general character, to those who would necessarily be exposed to risk and danger from the negligent discharge of such duty. 1 Shear. & R. Neg. § 116; Bigelow, Cas. Torts, 614.

Subject to proper limitations, the rule, generally stated, is that if a reasonable man must see that, if he did not use due care in the circumstances, he might cause injury to the person or property of another entitled to repose confidence in his diligence, a duty arises to use such care. Smith, Neg. 12, and notes; *Heaven* v. *Pender*, 11 Q. B. Div. 503. In this last case, *Winterbottom* v. *Wright*, 10 Mees. & W. 109, and other cases relied on by the defendant, are explained and distinguished. See, also, Pol. Torts, 449. We do not inquire as to the application of the rule here considered to intermediate carriers. The delivery of the car to the servants of the Manitoba Company was an affirmation that the car was fit for use, and the latter were entitled to repose confidence in the implied assurance that such was the fact.

Undoubtedly, by virtue of the relation of master and servant, the Manitoba Company would be liable to its employes if it undertook to use cars of another company without due inspection, and they should turn out to be defective and unsafe by reason of defects which might be ascertained by a reasonably careful inspection. *Gottlieb* v. *New York, L. E. & W. R. Co., supra; Fay* v. *Minn. & St. Louis Ry. Co.,* 30 Minn. 231, (15 N. W. Rep. 241.) But, as respects the condition of the car at the time it was delivered, the Manitoba Company did not owe the duty of inspection and repair to the Northern Pacific Railroad Company. It might refuse to receive and haul it, if not in

good condition, but the primary duty to use due diligence to see that the car was then safe and in suitable repair rested upon the latter company, though the Manitoba Company might also be subject to liabilities and duties in respect to the car, growing out of its acceptance, possession, and subsequent use. And the company owning the car should be held responsible for the consequences of its own wrongful or negligent acts or omissions, notwithstanding concurring negligent acts or omissions of the company receiving the car. The negligence of the latter does not excuse or relieve the former from liability for injuries resulting from its negligence.

The proximate cause of an event must be understood to be that which, in a natural and continuous sequence, unbroken by any new cause, produces that event, and without which that event would not have occurred. 1 Shear. & R. Neg. § 26. And if the original wrong only becomes injurious through some distinct wrongful act or neglect of another, the last wrong is the proximate cause, and the injury should be imputed to the last wrong, and not to that which is more remote. In order to relieve the first wrong-doer, there must intervene between him and the plaintiff an independent responsible agent, breaking the causal connection. Whart. Neg. § 438. We do not think such a case is here presented. The duty to exercise due care in the premises devolved on each company. Neither can excuse itself through the default of the other. Besides, in this case the inspection by the two companies was substantially one transaction, in pursuance of a mutual arrangement under which it was made jointly by the two car inspectors. The case of *Bartlett* v. *Boston Gas-Light Co.*, 117 Mass. 553, is we think clearly distinguishable. *Burt* v. *City of Boston*, 122 Mass. 223, 227. And *Child* v. *Hearn*, L. R. 9 Ex. 176, if in point, would hardly be accepted as authority on the questions here involved. Pol. Torts, 385. This case also differs from *Sawyer* v. *Minn. & St. Louis Ry. Co.*, 38 Minn. 103, (35 N. W. Rep. 671,) in its facts. There the defective car did not come into the hands of the plaintiff by the consent or authority of the owner, but was in the possession of another company, the plaintiff's master, who had undertaken to use it in transporting freight on its own road, after it should have been returned to the company owning it.

2. The brake-staff was not permanently fastened to the car. It consisted of an iron rod about three feet long, with a hand-wheel attached to the upper end, and used to turn or apply the brake, while the lower end was dropped into a socket fixed to the car, and could be lifted out at pleasure. That part of the lower end which entered the socket was five or six inches in length to the collar, which rested thereon, and was upwards of an inch in diameter, and was necessarily subjected to a severe strain in setting the brake, so as to stop or hold a loaded car. It is claimed by the plaintiff that there was a defect or crack near the lower end of the staff which weakened it and rendered it unsafe, when it was turned over to the Manitoba Company, and which caused it to break when the deceased was in the act of setting the brake, and he was in consequence suddenly precipitated upon the track, and fatally injured. The evidence in the case tends to establish the existence of such defect, and to show that the accident resulted from it. Upon the question of defendant's negligence, the court refused to take the case from the jury, and this is assigned as error. The car was looked over and examined by the inspectors, but their attention was not specially called to the brake-staff, nor was it particularly examined. Neither of them lifted it out of the socket, nor is there evidence of any previous careful examination of it. We think the court did not err in refusing to take the case from the jury. There was also sufficient to send the case to the jury upon the questions whether the defect in the brake complained of existed at all, and, if so, whether it had been there a considerable length of time before the accident, whether it was discoverable in the exercise of reasonable diligence by the defendant, and, finally, upon the question of the measure of diligence used. One of plaintiff's witnesses, who had examined the staff soon after it was broken, testified that there was an old fracture extending over one-third the way across it, and that the new fracture was a continuation of the old. This alleged defect was just below the collar, and inside the socket. It was the duty of the defendant to exercise reasonable diligence in the examination and supervision of such appliances, which, being in constant use, are liable to get out of repair, and the measure of care and diligence must be proportioned to the

risk and danger to be apprehended; and, if the safety of an employe depended upon the strength and soundness of that portion of the brake-staff in question here, it was the duty of the company to use reasonable diligence to make and keep it safe, and to this end the inspection should have been seasonable and adequate, and should have extended to that portion thereof which rested in the socket. We are unable to say that the evidence did not warrant the jury in finding that, by the exercise of reasonable care, the defect might not have been seasonably discovered and repaired, and think that this question, which is perhaps left most in doubt of any in the case, was properly submitted to the jury.

The evidence does not conclusively establish contributory negligence on the part of the deceased. It is not necessary to review it. It is enough to say that this question, if raised at all by the evidence, was for the jury.

It is also urged that the court erred in admitting the testimony of the witness Collier in respect to the character of the fracture of the staff, on the ground that no proper foundation had been laid for his testimony. The witness had examined the broken pieces of the rod after the accident, and testified as to their appearance, and stated that he had been in the hardware business, and "knew the difference between an old break and a new one." He was thereupon permitted to testify in respect to the character of this "break," that in his judgment it was an old fracture. There was no abuse of discretion or legal error in allowing the witness to testify. There was some foundation, at least, for his opinion, and its value might be further tested, as it was, by cross-examination.

The case was fairly tried, and submitted to the jury under clear, careful, and impartial instructions. Upon a full examination of the entire record, in connection with the points raised by appellant, we do not feel warranted in overruling the decision of the trial court refusing a new trial.

Judgment affirmed.

NOTE. A motion for a reargument of this case was denied May 4, 1891.