6020.   HOMER *v.* SEABOARD AIR-LINE RAILWAY *et al.*

Where a railroad company delivered one of its cars loaded with lumber to another railroad company, an employee of which, some days later, while the latter company was hauling lumber thereon in its yard, was injured by lumber falling from the car, because the car-sills were so rotten that the pockets for holding standards used in hauling lumber pulled out, and he sued the company that owned the car for damages on account of the injury, it was incumbent on him to show that at the time he was injured the car was being used for the purpose for which it had been delivered, or for a purpose authorized by that company.

(*a*) So far as appears from the plaintiff's petition, the purpose for which the Seaboard Air-Line Railway delivered its car to the Atlantic Coast Line Railroad Company had been fully accomplished by unloading the lumber delivered with the car before the injury occurred, and the lumber that the Atlantic Coast Line Railroad Company was hauling on the car at the time of the injury may have been a different load, and may have been loaded in a different and less safe manner than the original load, and the use then being made of the car may have been unauthorized by the Seaboard Air-Line Railway. The contrary does not appear from an allegation that the Seaboard Air-Line Railway "knew that [this car] would be used for hauling lumber by the Coast Line." The court did not err in sustaining a general demurrer and dismissing the action as to the Seaboard Air-Line Railway.

DECIDED SEPTEMBER 17, 1915.

Action for damages; from city court of Savannah—Judge Davis Freeman. August 14, 1914.

*Osborne & Lawrence,* for plaintiff.

*Anderson, Cann & Cann, P. W. Meldrim,* for defendants.

WADE, J.   Homer sued the Seaboard Air-Line Railway and the Atlantic Coast Line Railroad Company for damages on account of personal injuries. On general demurrer of the Seaboard Air-Line Railway, the court dismissed the action as to that company, and the plaintiff excepted. The petition alleged, that on October 13, 1913, the Seaboard Air-Line Railway delivered to the Atlantic Coast Line Railroad Company a flat-car loaded with lumber; that "the Seaboard knew it would be used for hauling lumber by the Coast Line;" that these two railroad companies "had traffic arrangements with each other whereby the cars of one company would be transferred to the tracks of the other as the business and traffic exigencies required;" that on October 16, 1913, the plaintiff, who was employed by the Atlantic Coast Line Railroad Company as a switchman on the switch-engine crew, was switching several cars in the Coast Line yards, in the city of Savannah, including

the said car delivered to the Coast Line by the Seaboard Air-Line Railway; that in the performance of his duties, he was standing by his car, giving a signal to the engineer in charge of the loco-. motive, when, by reason of the rottenness of the car-sills, the pockets intended for holding the uprights or standards used to confine lumber on the car pulled out, so that the lumber on the car fell down upon the plaintiff, injuring him in divers ways set out; that the injuries inflicted on him were the proximate result of the negligence of the two railroad companies in furnishing and using a car about which they knew he and other employees of the Coast Line had to work, and which was in so rotten and defective a condition that the pockets were likely to pull out and the contents to fall down and injure persons working about the car when loaded with lumber; and that by the exercise of ordinary care both defendants could have known of the condition of the car and of the likelihood that the pockets would pull out and permit the contents of the car to fall and injure persons about the same; that it was the duty of each defendant to inspect cars used for carrying lumber, and to have inspected this particular car; that a proper inspection would have disclosed the rotten condition of the sills and the consequent danger from its use; that the defendants were negligent in failing to make such inspection, and used the car without such inspection as ordinary care would have required; that the plaintiff himself was without fault; that it was not his duty to inspect the car, and he had no occasion or opportunity to know that the car-sills were defective or that there was any danger in operating the car, and could not by the exercise of ordinary care have discovered the condition of the sills.

It does not appear, from any allegations in the petition, that at the time the lumber fell on the plaintiff and inflicted the injuries for which he sued, the car was still loaded with the lumber which was on it when the car was delivered by the Seaboard Air-Line Railway to the Coast Line three days before that time; and, under the rule that pleadings are to be construed most strongly against the pleader, it may be assumed that it was a different load of lumber. And if injury on account of the defective condition of the car resulted from a load placed on the car after the original load had been discharged, it should have been alleged that the car was delivered to the Coast Line with the express purpose that it be re-

loaded with lumber by the Coast Line. Otherwise the Seaboard Air-Line Railway could not be charged with injuries resulting from defects in the car which the Coast Line should have discovered by inspection before reloading the car.

Our ruling in this case does not conflict with the ruling in Moon *v.* Northern Pacific R. Co., 46 Minn. 106 (48 N. W. 679, 24 Am. St. R. 194), that "Where, as between connecting lines of railway, the corporations controlling them are mutually bound to transport loaded freight-cars over their respective roads, such duty is necessarily subject to proper rules and regulations, and involves mutual obligations, among which is that of due diligence to provide safe cars for delivery to the servants of the company operating the connecting line to which they are transferred, and who would be exposed to danger from their defective or unsafe condition." In that case it appears .that the plaintiff's intestate, who was a brakeman in the employ of one railroad company, was killed while attempting to set a brake upon a loaded freight-car belonging to another railroad company, which car had been transferred by the company owning it to the track of the company by which the deceased was employed, for transportation over the road of the latter to a point thereon. There was a traffic arrangement between the companies, in pursuance of which loaded freight-cars were mutually transferred and transported over their respective lines, and, according to the rule adopted by the companies, cars so transported were inspected by both roads on the transfer track. The defective car, when received from the company owning it, was loaded with wood to be transported over the lines of the forwarding company, and, while it was being switched to its tracks by the forwarding company, the injury occurred, on account of a defective brake. The court held, that "the delivery of the car to the servants of the Manitoba Company [the said forwarding and connecting company] was an affirmation that the car was fit for use, and the latter were entitled to repose confidence in the implied assurance that such was the fact;" and that "the company owning the car should be held responsible for the consequences of its own wrongful or negligent acts or omissions, notwithstanding concurring negligent acts or omissions of the company receiving the car. The negligence of the latter does not excuse or relieve the former from liability for injuries resulting from its negligence." Further in the same

case it was said: "Besides, in this case the inspection by the two companies was substantially one transaction, in pursuance of a mutual arrangement under which it was made jointly by the two car-inspectors." And the court said that the case was different from Sawyer *v.* Railway Co., 39 Minn. 193 (35 N. W. 671, 8 Am. St. R. 648), in its facts, as "there the defective car did not come into the hands of the plaintiff by the consent or authority of the owner." In Pennsylvania Railroad Co. *v.* Snyder, 55 Ohio St. 342 (45 N. E. 559, 60 Am. St. R. 700), it was held: "If a railroad company, having a traffic arrangement with a connecting line, transfers to it a car so defective as to be dangerous, to be hauled over the latter's road, without having made a proper inspection thereof, and putting it in a safe condition for transportation, and an employee of the latter company is injured, during the course of his employment, because of a defect in the car, either company, or both, may be held answerable at the election of the injured party. The company receiving the car is negligent because of its omission to have it properly inspected, and hauling it in its defective condition, but the negligence of the delivering company in transferring it without inspection and repair is the primary cause of the injury, and the contributory negligence of the receiving company can not, with propriety, be said to have broken the connection between the original negligence of the company furnishing the defective car for transportaion and the injury resulting from its use." It will be observed that in both of the cases quoted from, the defective car was delivered to a connecting railroad in order that it might be moved over the latter for the further transportation of identical load or shipment which had been placed thereon by the owner of the defective car, and, so far as is disclosed in each of those cases, the defective car went forward over the connecting line without any change being made by the latter company in the status or condition of the load on the car when received by it.

In the case of *Savannah, Florida & Western Railway Co.* v. *Booth,* 98 *Ga.* 20 (25 S. E. 928), cited by counsel for the plaintiff, where a railroad company furnished a sawmill owner a car to be loaded with lumber, which car was defective in various particulars, and a servant of the mill owner was injured, the Supreme Court held that the railroad company was liable because of its failure to furnish a safe car. That case is clearly distinguishable

from the present case. The petition in this case does not allege that the Seaboard Air-Line Railway undertook to furnish the Coast Line with a car expressly to be used by the Coast Line in hauling lumber. The allegation in the 9th paragraph of the plaintiff's petition, that "the Seaboard knew that it [this defective car] would be used for hauling lumber by the Coast Line," falls short of declaring that there was any contract or understanding between the two roads whereby this car was delivered by the Seaboard to the Coast Line in order that lumber might be shipped thereon, or for the purpose of using it to haul lumber. So far as appears, the purpose of the Seaboard may have been merely to deliver a load of lumber to be unloaded somewhere along the tracks of the Coast Line. Even if the Seaboard "knew" that the Coast Line would use the car to haul lumber, it would be authorized to conclude that the Coast Line, before loading and using the car for that purpose, would inspect it to see its condition at that time with regard to safety. Though the sills of the car were partially decayed when the Seaboard loaded it with lumber, the car may nevertheless have been reasonably safe for the purpose of conveying that particular load, either on account of the shape or size of the pieces of lumber which made up the load, or perhaps on account of the manner in which that lumber was loaded, or perhaps because that load was held securely on the car by chains, ropes, or other means, independently of the uprights or standards, which it appears from the petition were alone relied upon to make safe and secure and hold intact upon the car the lumber thereon at the time of the injury.

Counsel for the plaintiff cite also the case of *Payne* v. *Rome Coca-Cola Bottling Co.,* 10 *Ga. App.* 762 (73 S. E. 1087), in which it was held, that "where an action is brought to recover damages for an injury caused by the explosion of a bottle, the contents of which were manufactured, bottled, and sold by the defendant as a harmless beverage, an inference of negligence on the part of the manufacturer arises, when it is shown that all the persons through whose hands the bottle had passed were free from fault, and that the condition of the bottle and its contents had not been changed since it left the defendant's possession." That case appears to us to be quite different from the case under consideration. The Coca-Cola in the bottle was advertised and sold by the defendant as a refreshing and harmless beverage, and the court held that as

bottles filled with a harmless and refreshing beverage do not usually explode, an inference of negligence somewhere and in somebody may arise when they do explode; that negligence is not necessarily to be inferred merely from the act itself, but that the jury may, from the happening of an event so unusual, infer negligence, under the doctrine of res ipsa loquitur; and the court further held, that by process of elimination of the various dealers through whose hands the bottle containing the Coca-Cola had passed, the manufacturer who set the dangerous agency in motion, and on account of whose defective workmanship the injury had resulted, might have the blame fastened upon him. It is apparent that the present case is not such a case. So far as the petition discloses, the purpose for which the Seaboard Air-Line Railway started the defective car, loaded with lumber, had been consummated by unloading the lumber and if the Coast Line thereafter loaded it and put it in motion of its own accord and without proper inspection, how could the Seaboard be held liable for the consequences? Suppose that after the bottler referred to above had charged, corked, and recapped the bottle, a purchaser uncorked the bottle and consumed the "harmless and refreshing" contents without injury, and thereafter had placed in the empty bottle the same kind of harmless and refreshing drink or some other liquid, but under a pressure different from that used by the original bottler, and had corked or sealed the bottle differently, and thereafter the bottle burst and inflicted injury upon some other purchaser or person, could it be then said that the original bottler would be liable for the injury?

It was said in *White* v. *A., B. & A. Railroad Co.,* 5 *Ga. App.* 308 (5) (63 S. E. 234), "to impose liability upon a railroad corporation for either the torts or the contracts of another railroad company, it must appear that such liability attaches either by operation of law or by contract. A petition in which it is sought to charge one railroad company with liability for the tort of another, and which fails to sufficiently set forth in what manner or for what reason such liability attaches, may properly be dismissed upon demurrer." In *Southern Railway Co.* v. *Morrison,* 105 *Ga.* 543, 549 (31 S. E. 564), it was said: "The servant of another seeking to recover damages from a railroad company for injuries sustained by him while shifting or moving a car on a siding, which had been left safely standing on such siding by the company for

the purpose of being unloaded, is not entitled to recover, unless he shall make it appear that he was thus moving or shifting the car by authority from the company, or at least that the invitation extended to him to unload such car embraced such authority." By no rule of construction can the allegation in the 9th paragraph of the plaintiff's petition, that the Seaboard Air-Line Railway *knew* that this car would be used for hauling lumber by the Coast Line, be held equivalent to an allegation that the moving or shifting of this car by the Coast Line through its switch-crew was by authority from the Seaboard Air-Line Railway; for, as already stated, it does not appear that the car was then being moved in order that the original shipment might be unloaded therefrom, but, so far as appears, the car was then being used to transport an entirely different shipment by the Coast Line of its own accord and not at the instance of the Seaboard Air-Line Railway, or, with its consent.

No relation of master and servant existed between the plaintiff and the Seaboard Air-Line Railway, and no obligation rested upon that company to furnish the plaintiff with safe machinery, tools, and appliances. In order to render this defendant liable it should appear that the injury was brought about by its negligence; and this does not appear. If the Seaboard car had safely performed the task laid upon it by the Seaboard Air-Line Railway and the injury to the plaintiff resulted on account of a different burden placed on this car by the Coast Line, without authority from the Seaboard Air-Line Railway, the latter company can not be held liable.

As already suggested, the simple fact that the Coast Line had possession of the car under traffic arrangements under which it originally received the car does not sufficiently show that the car was being used at the time the injury occurred with the authority or for the benefit of the Seaboard Air-Line Railway. It is stated in the brief for the defendant that it was admitted by counsel for the plaintiff in the court below that when this injury occurred, the load of lumber that was on the car when the Seaboard delivered the car to the Coast Line had been discharged, and the car had been reloaded by the Coast Line with other lumber, and was being shifted about the yards of the Coast Line by its employees preparatory to being made a part of a train made up for another jour-

ney, beginning on the Coast Line tracks. This statement is not challenged in the brief for the plaintiff; but, without considering here whether any such admission was or was not made, we are authorized, under the allegations of the petition, to assume that the injury did not occur while the car was on its original journey, and that the Seaboard Air-Line Railway had no interest in the carriage in which the car was engaged at the time of the injury. See, in this connection, *Roy* v. *Georgia Railroad Co.*, 17 *Ga. App.* 34 (86 S. E. 328).

In affirming the judgment of the court below, this court, in accordance with the request of counsel for the plaintiff, gives direction that if the plaintiff should file in the court below, before the remittitur from this court is entered on the minutes of that court, an appropriate amendment whereby the petition shall set out a sufficient cause of action, the case may be reinstated. *Dennis* v. *Schofield*, 1 *Ga. App.* 489-491 (57 S. E. 925), and cases there cited. See also *Green* v. *Massee & Felton Lumber Co.*, 6 *Ga. App.* 389 (65 S. E. 44). *Judgment affirmed, with direction.*