TOMPKINS *v.* AUGUSTA SOUTHERN RAILROAD CO.

1. Where by reason of the consolidation of two corporations one of them goes entirely out of existence, and no arrangements are made respecting the liabilities of the one which ceases to exist, the corporation resulting from such combination will, as a general rule, be entitled to all the property and answerable for all the liabilities of the corporation thus absorbed.

2. Where a statute authorizes the consolidation of two railroad companies "upon such terms as may be agreed upon," and does not declare how the existing liabilities or obligations of either shall be settled or performed, and a consolidation thereunder between two such companies is effected by a written contract providing for the absorption of one of them by the other, but making no provision at all for a certain class of liabilities ex-

.isting against the absorbed company, these liabilities become binding upon the new or surviving company, at least to the extent of the assets of the absorbed company, or of its ability to perform the contracts out of which such liabilities arose.

3. Where an agreement between two such companies, designated respectively as the "first party" and the "second party," in effect provided that the second party should cease to exist, that all its property, rights and franchises should go to the first party, and stipulated that "the first party hereby assumes the payment of all and every indebtedness and liability of the second party, it being understood and the second party hereby covenanting that there are no liabilities for unsecured debts and that the only secured debt and liability is its bonded debt": *Held*, that such an agreement did not provide for the performance of contracts of carriage embraced in mileage or trip tickets which had been issued by the second party, and it was incumbent on the new company to carry out such contracts as if they had been made by itself.

4. The expulsion from a passenger-train of such new company of a person who presented for passage a ticket of this kind, which had not expired by limitation, was wrongful and gave him a right of action against such new company.

Submitted April 21,—Decided June 11, 1897.

Action for damages.   Before Judge Gamble.   Washington superior court.   March term, 1896.

Tompkins sued the Augusta Southern R. R. Co., on account of being illegally ejected from its train on which he was a passenger.   The court granted a nonsuit on the ground that his right of action was against the Sandersville & Tennille R. R. Co., and not against the defendant.   The plaintiff excepted to this, and to each of the rulings hereafter stated.   He introduced in evidence the contract of consolidation between the two railroad companies named, dated February 13, 1894.   This contract, naming the Augusta Southern as the first party and the Sandersville & Tennille as the second party, recites, that they are operating railroads connecting with each other and forming a continuous line between Augusta and Tennille, the railroad of the second party being operated by the first party under a lease, and the stockholders of the second party being ready to sell their road to the first party on terms herein stated, so that the ownership of the two roads shall be merged into one ownership; that the capital stock of the first party is owned and the railroad operated by a committee of holders of the old bonds of the Augusta, Gibson & Sandersville R. R. Co., prede-

cessor of the first party, and there has been as yet no distribu-
tion of the capital stock and securities of the first party among
the holders of said old bonds, who are desirous of receiving
capital stock and securities issued against the joint property of
the first and second parties, and the holders of said old bonds
and the stockholders of the second party deem it just and wise
that some interest in the railroad properties be conceded to the
holders of the old stock of the A., G. &. S. R. R. Co.; that the
terms of this agreement have been submitted to the holders of
said old bonds and to meetings of the stockholders of the first
and second parties, called to consider the consolidation or
merger and issue of the stock, bonds and mortgages herein
provided for, and have been authorized and approved by reso-
lutions empowering the directors of each of the parties to carry
out the terms of this agreement; and that it is therefore agreed
between the first and second parties hereto as follows:    The
second party shall consolidate with the first party by being
merged into and becoming a part and portion of the first party
under the name and title of the Augusta Southern Railroad
Company, and except for the purpose of carrying out the terms
of this agreement and receiving and distributing to its stock-
holders the securities hereinafter provided to be issued to them,
and of executing any further instrument which may become
necessary to effectuate the intent of this agreement, the party
of the second part shall cease, determine, and no longer exist;
"and in order that the merger herein provided for shall be ef-
fectual, the second party hereby sells, assigns and transfers to
the first party all its right, title and interest in and to all and
any property, real, personal, and mixed, which it has in pos-
session, action or expectancy, or to which it may in anywise
succeed, and in and to all its franchises, privileges and immu-
nities now possessed by it, and agrees to surrender and deliver
to the first party all the bonds, stocks and certificates therefor
which it has heretofore issued; and the first party hereby as-
sumes the payment of all and every indebtedness and liability
of the second party, it being understood and the second party
convenanting that there are no liabilities for unsecured debts,
and that the only secured debt and liability is its bonded debt,"

etc. The contract then goes on to provide for the issue of stocks, bonds and mortgages under certain conditions and stipulations; and that the board of directors and officers of the first party shall be its directors and officers after the second party shall have been been merged into it.

The plaintiff, on July 21, 1893, had purchased from the Sandersville & Tennille R. R. Co. a ticket good for fifty fares, which was unlimited as to time, and had been only partly used when he presented it, on the night of March 14, 1894, to Raney, the conductor of the passenger-train of the defendant, who refused to accept it or to hear any statement from plaintiff in regard to it, and ejected him from the train. The court ruled out the ticket, upon objection that the defendant did not assume to carry out the contract thereof; that the language of the agreement of consolidation specified and qualified the liabilities, and did not assume to honor such tickets. The plaintiff proved, that previously to the day he was ejected from the train, the general superintendent of defendant had instructed Wicker, one of its conductors, to honor such tickets as plaintiff was using when he was so ejected, stating that defendant inherited the obligation to honor these tickets, by reason of the consolidation and merger of the two railroads. The information thus received by Wicker he conveyed to plaintiff in response to plaintiff's inquiry whether or not the ticket would be honored by defendant after the consolidation. Subsequently Wicker, having left defendant's employment and being upon its train as a passenger when plaintiff presented this ticket to another conductor, Tudor, told Tudor what instructions he had received from the general superintendent with regard to the ticket; and Tudor stated to Wicker and to plaintiff, that he had received the same information, to honor these tickets, from the general superintendent of defendant. There were three of these tickets unused at the date of the consolidation, one of them being held by plaintiff. Upon this proof the ticket was again offered in evidence, and was again rejected.

B. T. Rawlings, Evans & Evans and J. K. Hines, for plaintiff. Leonard Phinizy, for defendant.

FISH, J. 1. It is essential to a proper determination of the

present controversy, to enter into a brief discussion concerning the legal status of a railway company which, under authority of law, has been formed by the consolidation of two separate and independent corporations, whereby one of them is merged into the other and thus entirely loses its corporate existence.   We can not hope to better present the law governing in a case such as the one at bar than by quoting at length from the able and exhaustive treatise on this subject to be found in 1 Thompson's Commentaries on the Law of Corporations.   This distinguished author says:   "As a general rule, the new company succeeds to the rights, duties, obligations and liabilities of each of the precedent companies, whether arising ex contractu or ex delicto.   The charter powers, privileges and immunities of the corporations pass to and become vested in the consolidated company, except so far as otherwise provided by the act under which the consolidation takes place, or by other applicatory constitutional or legislative provisions.   As the power to amalgamate with another corporation is in the nature of a privilege or franchise, the legislature may grant it on terms.   It may require, as a condition of the grant, the new company to assume liabilities of the old corporations; and in most cases, no doubt, statutes authorizing the consolidations so provide in express terms.   .   .   The mere fact that a corporation is created with the same name and with the same franchises as those possessed by a preceding corporation, does not make it a continuation of the preceding corporation and liable for its debts.   But where the legislature authorizes the surrender of the charter of one company and its incorporation into another existing company, in such a sense that the latter company succeeds to the property, rights and privileges of the former and becomes merely its successor, it will be bound for its liabilities."   See § 365.   "Where the new corporation is thus made the heir, so to speak, of the obligations of the old, if the new company refuses to carry out such an obligation, the obligee can maintain an action against it for the resulting damages."   Ibid. § 382.   "After the consolidation the new company becomes liable to perform the public duties required of the precedent companies; and if no part of the

franchise is reserved to either of the old companies, they will not be liable to the public for the non-performance of the duties thus devolved on the new company. The duties which railroad companies owe to the public, and which are the considerations upon which their privileges are conferred by the legislature, can not be cast off by an agreement between such companies and other persons or corporations. Therefore, so much of a contract for the consolidation of two railway companies as operates to prevent a faithful discharge by the new company of its public duties is void as against public policy." Ibid. § 386. And, to the same effect, see 4 Am. & Eng. Enc. L. 272 n. As will be seen from an examination of the numerous decisions cited by Judge Thompson in support of his text, the law bearing upon the points dealt with is now well settled. That "a railroad company which succeeds to the rights and privileges conferred upon another by its charter becomes also subject to the same liabilities" imposed upon it, was distinctly held by this court in *Montgomery & West Point Railroad Co.* v. *Boring*, 51 *Ga.* 582. Further discussion on this line would therefore be unprofitable.

2. In this State, it is provided by legislative enactment, that "any railroad company incorporated under the provisions of" the general law for the incorporation of such companies shall have authority "to sell, lease, assign or transfer its stock, property and franchises to, or to consolidate the same with, those of any other railroad company incorporated under the laws of this or any other State or of the United States, whose railroad within or without this State shall connect with or form a continuous line with the railroad of the company incorporated under this law, *upon such terms as may be agreed upon.*" See Code of 1882, § 1689 (z); Civil Code, § 2179. The legislature has not, however, undertaken expressly to provide how the existing liabilities of or obligations resting upon the respective companies entering into a consolidation shall be settled or performed. Precisely what is meant by declaring such a consolidation may be effected "upon such terms as may be agreed upon," is not clear. Obviously, however, the phrase quoted is not to be understood as authorizing an agreement between

two companies, the effect of which would be to transfer to one of them all the property and franchises, and to invest it with all the rights, privileges and immunities of the other, free from all the liabilities, duties and obligations which the latter company owed to private individuals or to the public at large. To thus allow it to be stripped of all its assets and even its right to exist, without at the same time making proper provision for the payment of its debts and the performance of its duties and obligations by the company which succeeded it, would be directly opposed to public policy, as tending utterly to defeat the objects for which such corporations are chartered. 1 Thomp. Corp. § 386. It would therefore be much more reasonable to assume that the legislature intended that "such terms as may be agreed upon" are to settle, as between the two companies themselves and their respective stockholders, the rights and liabilities of each, but, as to third persons not participating in the negotiations and not parties to the contract, the law as previously announced in *Boring's* case, supra, shall apply, and the company which succeeds to the charter rights and privileges conferred upon the other is to be regarded as at the same time becoming responsible for all its debts and liabilities. But granting, for the sake of the argument, that our General Assembly intended to declare that, in any event, a contract entered into between two railroad companies looking to the consolidation of their lines should be considered conclusive as to the rights of third persons, it can not for a moment be contended that it was ever so remotely contemplated that the two contracting parties should have power to enter into an agreement opposed to public policy. It would clearly be contrary to public policy to permit them to agree practically to repudiate the debts, liabilities and obligations due by the company to be merged into the other; for our constitution expressly declares that the legislature can not itself pass any "law impairing the obligation of contracts," and it of course follows that a statute seeking to empower a private person to do what amounted to the same thing would be equally objectionable and invalid.

Where no "consolidation" is really effected, as where neither

of two railway companies surrenders its franchises or conveys away all of its property, doubtless a contract between them whereby one merely leases the property of the other, or purchases only an inconsiderable portion of the same, would not have the legal effect of charging the former with debts and liabilities of the latter not expressly assumed. But be this as it may, it is, on the other hand, certainly true that where a consolidation actually takes place between two such companies, under a written contract providing for the absorption of one of them by the other, but making no provision at all for a certain class of liabilities existing against the company which thus goes entirely out of existence, these liabilities, by operation of law, become binding upon the new or surviving company, at least to the extent of the assets of the absorbed company, or of its ability to perform the contracts out of which such liabilities arose. To this extent, the successor to the company absorbed would be responsible, even in the absence of any statutory liability; for "where several corporations are united in one, and the property of the old companies is vested in the new, the latter is liable in equity for the debts of the former, at least to the extent of the property received from them. . . The governing principle here is, that a corporation can not give away its assets to the prejudice of its creditors, but that a court of equity will follow such assets as a trust fund into the hands of any new custodian, the same not being a creditor or bona fide purchaser. It is scarcely necessary to add that, in such a case, the consolidated corporation holds the property received from the absorbed company with *notice* of any trust attaching to it in favor of its creditors, and can not claim the rights of a *bona fide purchaser without notice*." 1 Thomp. § 375.

3. In the written contract now under consideration, the Augusta Southern Railroad Company was designated as the "first party," and the Sandersville & Tennille Railroad Company as the "second party." This instrument recited that it was expressly agreed, "that the second party shall be consolidated with the first party by being merged into and becoming a part and portion of the first party, under the present name and title of the first party, to wit the Augusta Southern Rail-

road Company; and, except for the purpose of carrying out the terms of this agreement and receiving and distributing to its stockholders the securities hereinafter provided to be issued to them, and of executing any further instrument which may become necessary to effectuate the intent of this agreement, the said second party shall cease, determine, and no longer exist; and in order that the merger herein provided for shall be effectual, the second party hereby sells, assigns and transfers to the first party all its right, title, and interest in and to all and any property, real, personal, and mixed, which it has in possession, action or expectancy, or to which it may in anywise succeed, and in and to all its franchises, privileges and immunities now possessed by it, and agrees to surrender and deliver to the first party all the bonds, stocks and certificates therefor which it has heretofore issued; and the first party hereby assumes the payment of all and every indebtedness and liability of the second party, it being understood and the second party covenanting that there are no liabilities for unsecured debts, and that the only secured debt and liability is its bonded debt of $7,454.00." Referring to the last clause of the extract just quoted, counsel for the defendant in error, in a written argument presented by him, says: "The court will observe that, by the terms of the agreement of consolidation, the Augusta Southern Railroad Company did not assume to honor the tickets of the old Sandersville & Tennille Railroad Company, but only undertook to pay off and discharge the bonded indebtedness of $7,454; it being expressly understood and agreed in said contract that there were no unsecured liabilities, and that the only secured debt and liability was the bonded debt of $7,454 of the old Sandersville & Tennille Railroad Company."

If, as counsel thus insists, it was the purpose of the contracting parties to limit, as to third persons, all liability on the part of the Augusta Southern Railroad Company, save as to the bonded debt referred to, we would have no difficulty in holding that this stipulation was void as against public policy. For, as hereinbefore pointed out, where one railway company succeeds to all the property and franchises of another, and the latter thereupon ceases entirely to exist, the surviving corpora-

tion necessarily becomes responsible for the faithful performance of all obligations which the absorbed company has, by the surrender of its charter, rendered itself unable to meet. Indeed, it would never do to hold that our statute contemplated that a railway company thus merged into another could, by representing and covenanting that there were no obligations whatever it was under a duty to perform, practically repudiate its existing liabilities, and in this manner relieve its successor of all responsibility therefor. We do not, therefore, feel we would be justified in holding that it was the purpose of the Augusta Southern Railroad Company to assume only the bonded indebtedness in question. Had this been the purpose of the contracting parties, there would have been no occasion whatever for them to introduce into their contract the express stipulation that "the first party hereby assumes the payment of all and every indebtedness and liability of the second party." Certainly, if it was merely intended that the "first party" should assume payment of the bonded debt, it would seem that the contract would have recited simply this and nothing more. The language actually employed contradicts and negatives any such interpretation as that suggested by counsel. Much more likely is it that the Augusta Southern Railroad Company recognized that it would be legally bound to faithfully discharge "all and every indebtedness and liability of the second party," in the event the consolidation was effected, and merely insisted upon the covenant as to the extent of such "indebtedness and liability" with a view to being reimbursed by the absorbed company, or its stockholders, should claims other than the bonded debt be presented by third persons, for which it (the covenantee) might be held legally responsible. Clearly, if the "first party" to the contract meant absolutely nothing by expressly stipulating that it thereby assumed "the payment of all and every indebtedness and liability of the second party," why should the "first party" have insisted upon a covenant by the "second party" reciting that there were "no liabilities for unsecured debts, and that the only secured debt and liability" was its bonded debt of $7,454.00? Unless recognizing its legal obligation to pay other claims, the "first party" could

not have felt in the least concerned as to whether there were, or were not, liabilities other than the bonded debt, secured or unsecured; and there would have been no reason at all for the "second party" entering into a covenant regarding the extent of its indebtedness and liabilities, if it was not contemplated that the "first party" should assume, or ever be called upon by third persons to discharge, any liability save that specifically mentioned.

Were this otherwise, however, it would certainly be safe to hold, as we do in the present case, that the Sandersville & Tennille Railroad Company did not, by its covenant that there were "no liabilities for unsecured debts, and that the only secured debt and liability [was] its bonded debt," undertake to guarantee that there were no outstanding mileage or trip tickets which that company had previously sold and which it was legally bound to honor on presentation. The duty thus resting upon it of carrying as passengers the holders of such tickets can not be characterized as an "*unsecured debt*" *for which it* was liable, or as a "secured debt and liability." The latter phrase comprehends something more than a mere right to sue for damages in the event of a breach of a simple contract calling for the performance of specified services. A "debt," secured or unsecured, is "a liquidated demand" for "a sum of money due by certain and express agreement"; or, in other words, "a sum of money reduced to a certainty, and distinguished from a claim for uncertain damages." Anderson's Dic. of Law, 315. True, in the event the Sandersville & Tennille Railroad Company wrongfully refused to honor its contracts of carriage, it would become liable in damages; but until such unliquidated claims could be reduced to judgment, they would in no legal sense be "debts" outstanding against it. See *McElhaney* v. *Crawford*, 96 *Ga.* 174. Granting, therefore, that the Augusta Southern Railroad Company did not, under the terms of its contract, become bound to pay any class of claims covered by the covenant of the Sandersville & Tennille Railroad Company, it would follow that, even in a controversy between the contracting parties themselves, the latter company could not be held to have covenanted that it had fully carried out all con-

tracts of carriage, with respect to freight or passengers, which it had previously entered into. This being so, when the surviving corporation succeeded to the rights and franchises of the absorbed company, it certainly, in the absence of any express stipulations to the contrary contained in the agreement of consolidation, became incumbent upon such surviving corporation to faithfully discharge all duties which its predecessor was under an obligation to perform with respect to contracts of carriage entered into by it with its patrons. For, under such circumstances, the general rule stated in the first division of this opinion would apply, irrespective of the question whether, under the terms of our statute, it would in any event be within the power of the contracting parties to limit, as to third persons, the liability assumed by the new or surviving company relatively to obligations previously resting alone upon the company surrendering its corporate existence.

4. If legally bound to honor outstanding tickets regularly issued by the Sandersville & Tennille Railroad Company prior to the consolidation, a refusal on the part of the Augusta Southern Railroad Company so to do would necessarily subject it to liability as a common carrier. The plaintiff was shown to be the holder of such a ticket which had not expired by limitation, and therefore occupied the footing of a passenger in presenting himself for carriage. *Boring's* case, supra. His expulsion from the defendant's train was wrongful, and his right to maintain an action for damages sounding in tort is not to be questioned.

*Judgment reversed. All the Justices concurring.*