HAWKINS *v.* CENTRAL OF GEORGIA RAILWAY CO.

1. Without legislative exemption, a corporation charged with a duty to the public remains responsible for the proper discharge thereof, even after a lawful sale or lease.
2. The purchaser or lessee of a railroad company is likewise responsible for the violation of such public duty, where the liability arises from its acts of omission or commission.
3. Where there has been no sale, but a merger, and no provision made for the payment of the debts of the absorbed company, the consolidated corporation is liable for the debts of the former, at least to the extent of the value of the property received.
4. But where there has been a lawful and absolute sale of a railroad, the grantee is not responsible for the existing debts of the grantor.
5. Where, for a consideration furnished by *C*, *A* promises to pay *A*, the latter, though a stranger to the consideration, may maintain an action on the promise.

6. Actions must be brought in the name of the party in whom the legal interest in such contract is vested; and where *A* made no promise to *C*, the latter can not maintain a suit on the contract, even though *A* undertook therein to pay *B's* debt to *C*.

7. Where the Chattanooga Railroad Company sold its property and vendible franchises to the Central Railway Company, in consideration of $1,300,000, and an agreement by the Central Company to pay the Chattanooga Company's "current liabilities," the Central was not subject to a suit for personal injuries alleged to have been inflicted before the making of the sale.

Argued November 20, — Decided December 10, 1903.

Action for damages.     Before Judge Bartlett.     Polk superior court.     August 1, 1903.

The action was against the Central of Georgia Railway Company (hereinafter called the Central company), for injuries from having been run over by an engine of the Chattanooga, Rome & Southern Railroad Company (hereinafter called the Chattanooga company), in Polk county, July 26, 1900. The petition alleged, that on May 16, 1901, the Chattanooga company sold to the Central company, and made a deed (a copy of which was attached as an exhibit) conveying to it all of the railroad, real estate, personal property, rights, privileges, and franchises of, or belonging to, or thereafter to be acquired by the Chattanooga company; the consideration, according to the recitals in the deed, being $1,300,-000 in fifty-year four per cent. gold bonds of the Central company, "the assumption by the Central company of the current liabilities of the Chattanooga company," and the payment of $5 in cash. It appears from the deed that the sale was made subject to mortgages for $2,743,000 on the property of the Chattanooga company. It was alleged that "petitioner's claim for damages, under said deed and the agreement of consolidation in pursuance of which it was made, is covered in said deed, and . .. the Central Railway Company is directly liable to him for damages;" that "after said deed was made and delivered the Central . . company took possession of said Chattanooga . . company's entire line of railway," and of all its assets, both real and personal, "and took over also all the franchises of said Chattanooga . . company, and are now in possession of the same, operating said line of Railway;" that "said Chattanooga . . company has gone out of existence; it has no line of railroad, no visible property of any kind, and has ceased to do business, having yielded up to the Central . .

company all its property, franchises, and rights, and it has no organization, no officers or agents, in the State of Georgia or elsewhere, so far as petitioner can find out, or so far as he is advised and believes; and . . the Central . . company is directly liable to him for his damages; and . . the property of the old Chattanooga . . company, now in the possession and under the control of the said Central . . company. is liable to him for his damages;" and that, "by reason of the facts hereinbefore set out, said Central . . company has injured and damaged your petitioner and is indebted to him in the sum of twenty-five thousand dollars, and is liable to him in that sum." The defendant demurred at the first term, on the grounds, that the facts alleged are not sufficient in law for the plaintiff to maintain his action against the defendant; that there is no privity between the plaintiff and the defendant under the contract of sale; that if the defendant is liable in any event, the plaintiff can not maintain his suit until he shall have first recovered judgment against the Chattanooga company, or without joining the Chattanooga company with the defendant; and that the claim is an unliquidated demand, and not a "current liability" of the Chattanooga company assumed by the Central company as part of the purchase-money. At the trial term, after the petition had been amended by attaching the deed as an exhibit, the defendant demurred on the ground that the superior court of Polk county had no jurisdiction, and that the suit should have been brought in the county in which was the home office of the defendant.

*Seaborn & Barry Wright* and *Bunn & Trawick*, for plaintiff.
*J. Branham* and *Sanders & Davis*, for defendant.

LAMAR, J. There is conflict in the authorities as to how far a lessor corporation, charged with a public duty, is liable for the acts of its lessee. But whatever the rule elsewhere, unless there is a legislative exemption, our statute (Civil Code, § 1864) preserves to the public the liability of the vendor or lessor company, preventing it from escaping responsibility by a transfer of its property or franchises to a non-resident or insolvent, or even to a resident and solvent grantee. *Singleton* v. *S. W. R. R.*, 70 *Ga.* 468; Hart *v.* R. R., 33 S. C. 427; Harman *v.* R. R., 28 S. C. 401; contra, Arrowsmith *v.* Nashville R. *R.*, 57 Fed. 165. The original

company remains liable for the proper discharge of the obligations which it assumed to the public.     It may be held responsible, in damages or otherwise, for a failure to perform the same, even though the act may be committed or omitted by its grantee. Notwithstanding the sale, the duty to carry freight and transport passengers continues; and after the sale or lease, a person having a claim for damages by reason of a failure to perform such duty might have maintained an action against the Chattanooga company, or the Central company, or probably both, in one suit.

2. It is everywhere recognized that those operating a corporation charged with a duty to the public are subject to its burdens. The franchises are incumbered with corresponding duties, which, like covenants running with the land, are binding upon all who exercise the powers conferred.     This principle is codified in the Civil Code, § 1863, which makes the purchaser or lessee liable for its own acts of omission or commission while operating the franchises of another corporation. It is also, of course, solely liable on its private contracts, or for injuries to its own employees.     *Seaboard Air-Line Ry.* v. *Leader*, 115 *Ga.* 702; *Georgia R. Co.* v. *Strauss*, 110 *Ga.* 191.

3. But while it is conceded that the vendee is responsible for its own contracts or torts committed since the sale, it is claimed that these sections are not exhaustive of the law on the subject; and that on general principles one railroad can not by a transfer of any sort defeat the rights of creditors, or of persons having claims ex delicto, which existed at the time of the conveyance; that the purchaser takes the property burdened with all its pecuniary obligations; and that therefore the Central can be made to pay for damages inflicted by the Chattanooga company upon the plaintiff in December, 1900, although the purchase was not made until May, 1901.     In support of this position plaintiff cites *Montgomery & West Point R. Co.* v. *Boring*, 51 *Ga.* 582, and *Tompkins* v. *Augusta Southern R. Co.*, 102 *Ga.* 442, holding that the company which succeeds to the charter rights and privileges conferred upon the other is to be regarded as at the same time becoming responsible for all of its debts and liabilities.     But those cases are to be construed in the light of the facts.     Both were cases of merger, in which the corporate existence of the company against which the plaintiff had a claim had been merged into and

consolidated with the company sued.· The liability there was analogous to that of the husband for the debts of the wife under the old law of baron and femme. There had been a sort of corporate marriage, in which not only the name of the debtor had been changed, but its legal entity lost in the consolidation. The twain had become one. The suit necessarily had to be against the new creature. The shares of the old stockholders had been surrendered and exchanged for scrip in the consolidated company. There had been no sale or payment of the purchase-price ; and as the interests of stockholders were inferior to those of creditors, it would have been mere repudiation to preserve the rights of the shareholders by issuing stock in the consolidated company in exchange for their holdings in the old, without protecting or providing for the rights of its creditors. Hence, it was held (102 *Ga.* 443), that "where a consolidation actually takes place between two companies under a written contract providing for the absorption of the one by the other, but making no provision for liabilities against the company which goes out of existence, these liabilities by operation of law become binding upon the new company to the extent of the assets of the absorbed company, or to the extent of the latter's ability to perform the contracts out of which such liability arose." See also Morrison *v.* American Snuff Co., 79 Miss. 598, and note in 89 Am. State Rep. 598. But this is not such a case. Here there was no merger, but an absolute sale and the purchase-price was paid. There is no suggestion of any fraud or attempt to hinder, delay, or defeat the creditors of the Chattanooga company ; no allegation that the price paid was less than the value of the property bought; while it does distinctly appear that the Central paid $1,300,000 in mortgage bonds for property already encumbered to the extent of $2,743.000.

If, as contended by the plaintiff, the purchaser becomes responsible for all the existing indebtedness of the selling road, the Central company would be liable not only for claims like his, but for any deficiency on the foreclosure of the mortgage securing the outstanding bonds of the Chattanooga company, even though the $1,300,000 paid was the full value of the property bought. There is no principle of law which requires the buyer to pay twice, or more than the property is worth, or more than the contract price. In the absence of any allegation to the contrary, it is fair to pre-

sume that the Chattanooga company, in exchanging the railroad for negotiable bonds, was expected out of the proceeds to pay all its outstanding claims before any distribution was made among its stockholders. But if it failed in the performance of this duty, or if the liquidated debts were secured by liens, or were of prior dignity to the plaintiff's claim, or exceeded the amount received on the sale, the obligation was not upon the Central to supply the deficiency. The plaintiff's misfortune would in such case be similar to that of the many who have claims against insolvent debtors. However, for aught that appears, the plaintiff, after obtaining judgment, may yet recover from the Chattanooga company, or from its stockholders, if there has been an unlawful distribution to them (Civil Code, § 1886); or, if his claim be included in the " current liabilities " assumed, he may by appropriate proceedings raise that question with the Central company.

4. So far as liability for the previous public duties is concerned, the law makes both the vendor and vendee responsible for breach of that duty occurring after the sale. It preserves the rights of existing creditors to the extent of permitting a suit against the new corporation, where there has been a union, merger, or consolidation of the two corporations. As to claims against one corporation whose property has been purchased by another, the general law would apply, prohibiting any transaction in fraud of creditors, and preventing an assignment by an insolvent wherein it or the stockholders reserved any benefit or trust. Civil Code, § 2695, par. 1, 2. But in other respects an out and out sale of the property of the corporation is not different from a case in which an individual sells visible property subject to levy, in exchange for cash or negotiable instruments which may be put beyond the reach of the levying officer. When a railroad has a right to sell, the ordinary incidents of a sale attach ; and assuming that it is in good faith and for a fair value, the buyer is not responsible for more than the purchase-price. The law does not exact the payment of the vendor's debts by the vendee, as a condition precedent to the exercise of the power of sale. The plaintiff had the usual rights of creditors in such cases. He could sue the vendor and garnish the purchaser, or he could obtain judgment and use his legal or equitable remedies in order to enforce payment thereof. Whether both companies can be joined as defendants in one suit

is not before us for determination.   In Dickey v. Kansas City R. Co., 122 Mo. 223; Wallace v. Ann Arbor R. Co. (Mich.), 80 N. W. 572 (2), and Dallas Ry. Co. v. Maddox (Tex.), 31 S. W. 702, the railroads were conveyed by deed of the vendor, and the vendee was held not to be liable for the vendor's debt.   The same conclusion was reached in Hoard v. Chesapeake & Ohio R. Co., 123 U. S. 223, 226, where the purchase was made at foreclosure sale.   The pleadings must be construed as a whole, and the allegation in the petition that the Chattanooga company sold all of its property and franchises to the Central company necessarily refers to property other than the $1,300,000 bonds which were paid, and the franchises must mean those secondary and vendible franchises which may be transferred without destruction of the corporate existence of the vendor.   And even if, as alleged, it has " gone out of existence," or if it be no longer transacting business, and has no officer or agent in this State or elsewhere, the Civil Code, § 1892, provides a method by which service may be perfected so as to bind the Chattanooga company or its stockholders.

5. The plaintiff insists, however, that even if the Central is not liable as matter of law for torts committed before the sale by the Chattanooga company, it is liable in this action by reason of the provision in the sealed contract by which the Central assumed the " current liabilities" of the Chattanooga company.   On this subject there are two lines of authorities.   One holds that where a promise is made to one for the benefit of another, he for whose benefit it is made may bring an action for its breach.   Lawrence v. Fox, 20 N. Y. 268.   The other, recognized in England, in the Federal courts, and in several of the American States, is that the consideration must move from the plaintiff, and that a person for whose benefit a promise is made, but who is not a party to the contract, can not sue the promisor.   To this rule there are some exceptions, as where under the contract between two persons assets have come into the promisor's hands which in equity belong to a third person.   In such a case the third person may sue in his own name, but then the suit is founded rather on the implied undertaking the law raises from the possession of the assets than on the express promise.   National Bank of St. Louis v. Grand Lodge, 98 U. S. 124; Keller v. Ashford, 133 Mass. 610; Mullen v. Whipple, 1 Gray, 321.   We are, however, relieved from deciding between

these divergent authorities, in view of the common-law principle as codified in the Civil Code, §§ 3664, 4939. Under the first of these, it is not necessary that the consideration should have been furnished by the plaintiff, if there was in fact a promise to him; for "if there be a valid consideration for the promise, it matters not from whom it is moved; the promisee may sustain his action, though a stranger to the consideration." Thus, where A makes a promise to B, and the consideration therefor is furnished by C, the promisee, B, may maintain suit thereon. Thus if property is placed in the hands of an assignee or trustee to be sold and the proceeds applied to the payment of creditors, the latter may sue in equity to enforce the agreement for their benefit (*Bell* v. *Mc-Grady*, 32 *Ga.* 257; *Dallas* v. *Heard*, 32 *Ga.* 604 (2)), or at law for money had and received by the assignee for the plaintiff's use. *Wright* v. *Damish*, 74 *Ga.* 828. But where the third person is not named as promisee, and where no trust is created in his favor, but the promisor merely assumes to pay the debt of the other to the third person, the latter can not maintain an action thereon. Where the Georgia Home Insurance Company purchased the assets of the Empire State Insurance Company, and assumed the payment of indebtedness due or to become due on its policies; and subsequently a policy-holder sued the Georgia Home, it was held there was no such privity between it and the assured as would entitle him to a separate action at law against the Georgia Home on the contract made between the two corporations. *Empire State Ins. Co.* v. *Collins*, 54 *Ga.* 376; *Pfeiffer* v. *Hunt*, 75 *Ga.* 513; *Gunter* v. *Mooney*, 72 *Ga.* 205; *Austell* v. *Humphries*, 99 *Ga.* 408. And the Civil Code, § 4939, provides: "As a general rule, the action on a contract, whether express or implied, or whether by parol or under seal, or of record, must be brought in the name of the party in whom the legal interest in such contract is vested, and against the party who made it in person or by agent." The rule preventing the third person from maintaining such action is particularly applicable where there is no specification of the number or names of such creditors, or the amount of their demands. For, as stated in Dow *v.* Clark, 7 Gray, 201, "if the plaintiff can maintain this action, so may every one of the other creditors of the corporation, whatever may be their number; and the defendant may be held answerable to persons of whom they never heard. And

they will be bound in such actions to litigate the question whether the party who sues them has a legal claim on the corporation." Where the plaintiff's demand is not liquidated, but is based on an alleged tort, the promisor, in the absence of an express agreement, can not be held to the burden of litigating with the plaintiff on a cause of action he may have against the promisee. On the general subject see 7 Am. & Eng. Enc. L. (2d ed.) 105–109, and the many authorities there cited.

These conclusions render it unnecessary to determine whether the plaintiff's claim was " a current liability " of the Chattanooga company, assumed by the Central. The demurrer was properly sustained.　　　*Judgment affirmed.　All the Justices concur.*