992. WHITE, by next friend, *v.* ATLANTA, BIRMINGHAM AND ATLANTIC RAILROAD COMPANY.

1. All necessary jurisdictional facts must appear from the plaintiff's petition, and their absence may be taken advantage of by demurrer.
2. The courts take judicial notice of the principal office or legal residence of railroad companies incorporated under the laws of this State.
3. Except where otherwise provided by law, a suit against a railroad company chartered under the laws of this State must be brought in the county in which is located its principal office.
4. A suit brought against a railroad company having its principal office

in this State, to recover upon the liability attaching to it as the pur-·chaser or successor in title of another corporation or. an individual, to whom the injuries alleged were primarily chargeable, must be brought in the county of the defendant company's principal office or place of business.

5. To impose liability upon a railroad corporation for either the torts or the contracts of another railroad company, it must appear that such liability attaches either by operation of law or by contract. A petition in which it is sought to charge one railroad company with liability for the tort of another, and which fails to sufficiently set forth in what manner or for what reason such liability attaches, may properly be dismissed· upon demurrer.

6. It is contrary to public policy for a railroad company to avoid any . such liability by mere reorganization and change of its corporate name. And where this or similar device is resorted to, one railroad company might be held liable even for the torts of the corporation previously in possession of its property and franchise; but where there has been a lawful sale of a railroad, the grantee is not responsible for the preexisting debts of the grantor, nor liable for its torts.

(a) The allegations of the petition in the present instance did not show that there had been a merger of the Atlantic & Birmingham Railway Company with the defendant, or negative the inference that the depot and property of that company had become the property of the defendant by virtue of a proper judicial sale.

7. Advantage may be taken of the failure to set forth in the petition the jurisdiction of the court, both by demurrer and by a motion to dismiss; and the fact that both remedies were allowed is not error of which a plaintiff can complain.

Action for damages, from city court of Douglas—Judge Roan. June 9, 1908.

Argued March 12,—Decided December·22, 1908.

*Rogers & Heath, Lankford & Dickerson*, for plaintiff.

*Rosser & Brandon, Crovatt & Whitfield, J. W. Quincey*, for defendant.

RUSSELL, J. Leon B. White, by his next friend, brought a petition against the Atlanta, Birmingham & Atlantic Railroad Company, to recover damages for a personal injury. A similar suit had previously been brought against the Atlantic & Birmingham Railway Company, which was voluntarily dismissed, and the costs had been paid. The petition alleges, that the plaintiff, who was a child of tender years, was employed as messenger boy in the office of the Postal Telegraph-Cable Company at Douglas, Georgia; that the telegraph company's office is at the office of the agent of the defendant railroad company, and the same individual is agent of the railroad company and of the telegraph company;

that the plaintiff's duty required him to come back and forth to the office, and, when not actually engaged in carrying messages, he was permitted by the agent of the railroad company to play in the freight room of the depot; and that while playing there upon the occasion mentioned in the petition, he was injured by the fall of a large drum and the machinery attached thereto, which had been improperly and negligently so placed as to be liable to fall if touched, even with a very small degree of force. The petitioner alleged that he was seriously and permanently injured, and that his injury was entirely due to the negligence of the Atlantic & Birmingham Railway Company and its agents; that it was negligent in permitting the Postal Telegraph-Cable Company to employ and retain upon its premises and in its building a minor of such tender years as the plaintiff, and in permitting a minor of such tender years to use its freight department as a place in which to play, and in not warning the minor of the dangerous position of playing in such close proximity to a heavy article of freight, and especially the drum above mentioned; that the railway company was especially negligent in leaving the heavy drum standing in an unbalanced and unsafe position, in a careless and negligent manner, so that by a slight push, movement, or jar the same would fall; that it was negligent in not keeping the said minor in the office of the agency of the telegraph company, and in not keeping him out of the warehouse, and in not guarding against the danger he was subjected to. After having set forth this cause of action against the Atlantic & Birmingham Railway Company the petitioner avers, that during the early part of the year 1906, the said company discontinued operation of its road as above described, and relinquished the ownership of said depot in the city of Douglas, Georgia, as above described, and since that time has not done any business in the county of Coffee, nor since that time has it had any offices or agents in said county, upon which the petitioner could perfect service; that during the early part of the year 1906, the defendant succeeded the said Atlantic & Birmingham Railway Company as the owner of the railroad and the depot building above described, and that since that time the defendant company has operated said line of road through said county, and has been the occupant of said building, and still owns, holds, and occupies the same, as a place in which to transact the business of its agency

in said station, Douglas, in said county, and is the successor of the Atlantic & Birmingham Railway Company, and that "this petitioner is advised and believes that the defendant company is composed largely of the same stockholders as composed the Atlantic & Birmingham Railway Company before defendant company became its successor; petitioner says that after diligent inquiry, and so far as he has been able to ascertain, the Atlantic & Birmingham Railway Company has not been since the early part of the year 1906, nor is it now, engaged in the railroad business in said State; and that it has no tangible assets in said county of Coffee or said State; and that it has no agents or offices in said county of Coffee, where the above and foregoing described injury occurred, upon which this petitioner could perfect service of suit;
. . that the said defendant, as successor to the Atlantic & Birmingham Railway Company, by reason of its negligence as aforesaid, in allowing and permitting said drum as aforesaid and above described, to fall upon said Leon B. White, and by causing the injuries above set out, and by reason of all the other allegations incorporated in the above petition, has injured and damaged your petitioner in the sum of twenty-five thousand dollars, and your petitioner prays judgment for that amount."

The defendant, the Atlanta, Birmingham and Atlantic Railroad Company, demurred to the petition, and also moved to dismiss the petition; and both the demurrer and the motion to dismiss were sustained, and the plaintiff excepts to both judgments. In both the demurrer and the motion to dismiss three insistences were maintained by the defendant: (a) that the petition fails to set out a cause of action against the original wrong-doer, the Atlantic & Birmingham Railway Company; (b) that even if a cause of action appears against the Atlantic & Birmingham Railway Company, no cause of action is shown against the present defendant; (c) that even if the petition sets out a cause of action against the Atlantic & Birmingham Railway Company, and shows that the defendant is liable thereunder, the city court of Douglas is without jurisdiction.

It is unnecessary to determine whether the petition sets out a cause of action against the Atlantic & Birmingham Railway Company, if it should appear either that it fails to set out the jurisdiction or fails to show how and for what reason the defendant

is liable for the alleged tort of another. We are of the opinion that the allegations of the petition are insufficient to charge the Atlanta, Birmingham & Atlantic Railroad Company with any liability arising from the tort alleged against the Atlantic & Birmingham Railway Company; and upon this ground the court could properly have sustained the demurrer and dismissed the petition. We are also of the opinion that the motion to dismiss, upon the ground that the jurisdiction of the court was not shown, should have been sustained. Nothing is better settled than that all necessary jurisdictional facts must be averred in the petition of a plaintiff. In the present instance it does not appear, from the examination of the petition as a whole, that the city court of Douglas has jurisdiction of this cause of action, but, on the contrary, it appears that the city court of Douglas has no jurisdiction of the cause of action as set forth. The plaintiff does not allege that he was injured by the defendant, but alleges that the injury was by the Atlantic & Birmingham Railway Company. So that while the injury would be a cause of action against that company, the plaintiff's cause of action against the present defendant arises entirely from the alleged liability of the defendant, dependent upon its succeeding to the original liability of the original tort-feasor. While the plaintiff's action depends, as an original proposition, upon the injury inflicted in Coffee county, and for that reason he might have maintained an action against the Atlantic & Birmingham Railway Company there, yet it does not appear where the merger, or transfer, or purchase, by means of which the present cause of action originated, so far as the Atlanta, Birmingham & Atlantic Railroad Company is concerned, took place. Section 2334 of the Civil Code, taken from the act of 1892, is an exception to the general rule that all defendants are to be sued in the county of their legal residence. And any cause of action which does not come clearly within the express provisions of this exception must be prosecuted in the county of the railroad company's legal residence. If the Atlanta, Birmingham & Atlantic Railroad Company is responsible for the tort of the Atlantic & Birmingham Railway Company, its liability must attach either by operation of law or by reason of some contract entered into, by the terms of which the defendant assumed its liabilities. Neither this provision of law nor the contract would be the origin of this cause of

action against the present defendant; no matter where the former cause of action for which the defendant has now become liable may have originated. In other words, the plaintiff's cause of action against the Atlantic & Birmingham Railway Company is the tort; his cause of action against the Atlanta, Birmingham & Atlantic Railroad Company is its liability, arising either by law or contract, to pay him the amount he would have been entitled to have received for compensation for the injury inflicted upon him by the Atlantic & Birmingham Railway Company. The right to sue a railroad company elsewhere than in the county of its principal office being conferred by statute, and being an exception to the general rule, the burden is upon the plaintiff, suing elsewhere than in the county of the railroad company's principal office, to show that the court to which his action is addressed has jurisdiction; and it is not enough that the jurisdiction appears from one paragraph of the petition, if the subsequent statements of the petition, as a whole, show that the court is without jurisdiction. The rule being that the pleadings are to be construed most strongly against the pleader, the allegations wherein the court is shown to be without jurisdiction will be regarded in preference to those in contradiction thereof, from which it might appear that the court had jurisdiction; but in any instance, if it is doubtful, from a consideration of the record as a whole, whether the jurisdiction has been alleged, the doubt will be resolved against the pleader.

In *McCall* v. *Central Ry. Co.*, 120 *Ga.* 604 (48 S. E. 158), it was held that "unless the right to sue elsewhere is specially given by the statute, suits against a railroad company of this State should be brought in the county of its principal place of business." Counsel for the plaintiff in error contends that the case of *Hawkins* v. *Central Ry. Co.*, 119 *Ga.* 159 (46 S. E. 82), is not applicable to the case at bar, because "there was a straight sale of the railroad company, under a deed, and plaintiff attached a copy of the deed of sale, showing the relations existing between the two corporations; and, thus making the deed a part of those pleadings, he relied upon terms of the deed for a recovery in his case." It is true that in the *Hawkins* case the court held, among other things, that there was no such privity between the plaintiff and the Central of Georgia Railway Company as would permit Hawkins to recover on the promise of that company to assume the current

liabilities of the Chattanooga, Rome & Southern Railroad Company. That ruling, however, was only directed to one of the points; and the court held further that if his claim was included in the current liabilities assumed, he might even raise that question with the Central Company by appropriate pleadings. But the distinction is clearly drawn between a sale and a union, merger, or consolidation of the two corporations. As said by Justice Lamar in rendering the opinion of the court, the law "preserves the rights of existing creditors to the extent of permitting a suit against the new corporation, where there has been a union, merger, or consolidation of the two corporations. As to claims against one corporation whose property has been purchased by another, the general law would apply, prohibiting any transaction in fraud of creditors, and preventing an assignment by an insolvent wherein it or the stockholders reserved any benefit or trust. Civil Code, §2695, par. 1, 2. But in other respects an out and out sale of the property of the corporation is not different from a case in which an individual sells visible property subject to levy, in exchange for cash or negotiable instruments which may be put beyond the reach of the levying officer. When a railroad has a right to sell, the ordinary incidents of a sale attach; and assuming that it is in good faith and for a fair value, the buyer is not responsible for more than the purchase-price. The law does not exact the payment of the vendor's debts by the vendee, as a condition precedent to the exercise of the power of sale." See Dickey *v.* Kan. City R. Co., 122 Mo. 223 (26 S. W. 685) ; Wallace *v.* Ann Arbor R. Co., 121 Mich. 588 (80 N. W. 572) ; Dallas Ry. Co. *v.* Maddox (Tex.), 31 S. W. 702; Hoard *v.* Chesapeake & Ohio R. Co., 123 U. S. 223-226 (8 Sup. Ct. 74, 31 L. ed. 130).

There is nothing in the petition to show that even if the Atlantic & Birmingham Railway Company had gone out of business, it did not make a fair sale to the defendant; and if it has gone out of business and has no officer or agent in this State or elsewhere, a method is provided, in §1892 of the Civil Code, by which its stockholders may be bound.

In considering the question of jurisdiction, we have already adverted to the fact that the allegations of the petition do not make out a good cause of action against the defendant, even if the jurisdiction properly appears. This proposition is supported by

the authorities last cited, and by the learned opinion of Justice Lamar in the *Hawkins* case. We fully agree with the argument of counsel for the plaintiff in error, in so far as it is supported by the rulings in *Montgomery & West Point R. Co.* v. *Boring, 51 Ga. 582,* and *Tompkins* v. *Augusta Southern R. Co., 102 Ga.* 442 (30 S. E. 992); but both of these were cases of consolidation. The Sandersville & Tennille Railroad, which occupied the same relation in the *Tompkins* case that the Atlantic & Birmingham Railway Company bears to this, so far as being the original tort-feasor is concerned, was simply merged into the Augusta Southern by agreement of the stockholders of both. The decision in the *Boring* case, supra, properly held that "a railroad company which succeeds to the rights and privileges conferred upon another by its charter becomes also subject to the same liabilities." The plaintiff's case seems to be based upon the language used in the *Boring* case; but in that case the real point was whether there was really any such corporation as the Montgomery & West Point Railroad Company, and the evidence clearly showed that there had been such a corporation, and that it was most effectually merged with the Western Railroad of Alabama by an act of the legislature authorizing it to surrender its charter, and its stockholders were reincorporated under the latter name. As was said in *Tompkins* v. *Augusta Southern R. Co.,* supra, "the legislature has not, however, expressly undertaken to provide how the existing liabilities of or obligations resting upon the respective companies entering into a consolidation shall be settled or performed. Precisely what is meant by declaring such a consolidation may be effected 'upon such terms as may be agreed upon,' is not clear. Obviously, however, the phrase quoted is not to be understood as authorizing an agreement between two companies, the effect of which would be to transfer to one of them all the property and franchises, and to invest it with all the rights, privileges and immunities of the other, free from all the liabilities, duties and obligations which the latter company owed to private individuals or to the public at large. To thus allow it to be stripped of all its assets and even its right to exist, without at the same time making proper provision for the payment of its debt and the performance of its duties and obligations by the company which succeeded it, would be directly opposed to public policy as tending utterly to defeat the

objects for which such corporations are chartered. 1 Thomp. Corp. §386. It would therefore be much more reasonable to assume that the legislature intended that 'such terms as may be agreed upon' are to settle, as between the two companies themselves and their respective stockholders, the rights and liabilities of each, but, as to third persons not participating in the negotiations and not parties to the contract, the law as previously announced in *Boring's* case, supra, shall apply, and the company which succeeds to the charter rights and privileges conferred upon the other is to be regarded as at the same time becoming responsible for all its debts and liabilities. But granting, for the sake of the argument, that our General Assembly intended to declare that, in any event, a contract entered into between two railroad companies looking to the consolidation of their lines should be considered conclusive as to the rights of third persons, it can not for a moment be contended that it was ever so remotely contemplated that the two contracting parties should have power to enter into an agreement opposed to public policy. It would clearly be contrary to public policy to permit them to agree practically to repudiate the debts, liabilities and obligations due by the company to be merged into the other; for our constitution expressly declares that the legislature can not itself pass any 'law impairing the obligation of contracts,' and it of course follows that a statute seeking to empower a private person to do what amounted to the same thing would be equally objectionable and invalid. Where no 'consolidation' is really effected, as where neither of the two railway companies surrenders its franchises or conveys away all of its property, doubtless a contract between them whereby one merely leases the property of the other, or purchases only an inconsiderable portion of the same, would not have the legal effect of charging the former with debts and liabilities of the latter not expressly assumed. But be this as it may, it is, on the other hand, certainly true that where a consolidation actually takes place between two such companies, under a written contract providing for the absorption of one of them by the other, but making no provision at all for a certain class of liabilities existing against the company which thus goes entirely out of existence, these liabilities, by operation of law, become binding upon the new or surviving company, at least to the extent of the assets of the absorbed company, or of its ability

to perform the contracts out of which such liabilities arose. To this extent, the successor to the company absorbed would be responsible, even in the absence of any statutory liability, for 'where several corporations are united in one, and the property of the old company is vested in the new, the latter is liable in equity for the debts of the former, at least to the extent of the property received from them. . . The governing principle here is, that a corporation can not give away its assets to the prejudice of its creditors, but that a court of equity will follow such assets as a trust fund into the hands of any new custodian, the same not being a creditor or a bona fide purchaser. It is scarcely necessary to add that, in such a case, the consolidated corporation holds the property received from the absorbed company with *notice* of any trust attaching to it in favor of its creditors, and can not claim the rights of a *bona fide purchaser without notice.*' 1 Thomp. §375." *Judgment affirmed.*