## CITY OF ALBANY *v.* GEORGIA-ALABAMA POWER CO.

1. A deed executed by one corporation to another, which purports to convey for a valuable consideration, reciting that it does " grant, bargain, sell, and convey to the party of the second part, its successors and assigns," all of its personal property and realty, " as well as all franchises, contracts, rights, leases, and all accounts receivable," does not import consolidation or merger of the two corporations, but shows a sale of all of the property of the grantor to the grantee.
2. Under the facts of the case the court did not err in holding that the purchasing corporation was not bound to fulfill the terms of the original contract between the vendor corporation and the municipality with which it had a contract for furnishing electric power.

3. Nor did the court err in holding that no estoppel was shown, as against the purchasing corporation, from denying that it was bound by the terms of the original contract between the vendor corporation and the municipality, and asserting on the contrary that if it was bound by any contract it was the one under which it had operated from the time of its purchase, under the deed referred to, of the property of the first corporation up to the time the present controversy arose.

4. This case should not be dismissed on the ground that the questions are moot.

No. 2247.    SEPTEMBER 26, 1921.

Petition for injunction.    Before Judge Harrell.    Dougherty superior court.   August 20, 1920.

The City of Albany, plaintiff in the court below, by its petition against the Georgia-Alabama Power Company, sought to have the company enjoined from cutting off the electric current or power which it was alleged the company was then furnishing the city, under a contract for the operation of the city's water and electric-light and power plant; alleging that the company was demanding the immediate and unconditional payment in full of a bill for current, the amount of which was greatly in excess of what the city was authorized to pay, under the terms of the alleged contract; and that the company intended and was threatening to cut off the current or power being furnished the city if the entire bill was not paid; the city alleging that if the current or power was cut off the city's damage would be irreparable. The company filed its answer at the interlocutory hearing, and contended therein that its bill was correct, and offered in support of this defense an alleged contract between the City of Albany and the Albany Power and Manufacturing Company, which the defendant had succeeded, and which contract was subsequent to the original contract relied upon by the city, and was contended by the Albany Power & Mfg. Co. to have modified the original contract. The defendant produced this alleged subsequent contract and introduced the same in evidence. The city, by demurrer and objection to its admission in evidence, attacked the validity of this alleged subsequent contract, on various grounds. The court admitted the same in evidence. The original contract between the Albany Power & Manufacturing Co. (hereinafter referred to as the Albany Power Co.) and the City of Albany, and which is hereinafter referred to as the original contract, or the contract of 1904, embraces an agreement that upon the terms

stated in the contract the Albany Power Company should furnish for a period of 17 years electrical power in a stipulated minimum amount to the municipality; and the contract also stipulates for the furnishing of additional power, and the rates at which this additional power is to be furnished. It was further agreed that the contract should be for a term of 17 years and become effective as soon as the power plant was installed and the company was in a position to furnish the power therein contracted for, not later than October 1, 1905; also that the contract should be authorized at an election by the qualified voters of the City of Albany, as required by the constitution of the State. Subsequently, in the year 1909, the Albany Power Company addressed the following communication to the City:

"R. P. Hall, Clerk, Hon. H. A. Tarver, Mayor, Albany, Ga.

"Dear Sir: The Albany Power & Manufacturing Co. hereby agree to settle with the City of Albany for excess power on basis of 56 H. P. for 1908 and 60 H. P. for 1909, and that future settlements shall be made on basis of the average peak load above 300 H. P. The fire load coming on during the peak shall not be considered by the Power Co., but under such conditions the City agrees to throw off all power possible, so as to reduce it to the minimum. It is also understood and agreed that the City will come off of all motors which they are now operating in the city, and not to take on any more motors.

"Albany Power & Manufacturing Co., by Smith D. Pickett, President."

The City of Albany took action upon this communication, as shown by the following extracts from the minutes:

"Albany, Ga. Dec. 20th, 1909.

"Regular meeting adjourned from regular meeting on 14th day of December, 1909. Present — Mayor Tarver, Aldermen Kalmon, Jones, Ehrlich, and Sterne. Absent — Aldermen Vason and Rawlins. Mayor Tarver stated that the Albany Power and Manufacturing Co. had agreed to settle with the City of Albany for excess power on basis of 56 H. P. for 1908 and 60 H. P. for 1909, and that future settlements shall be made on basis of the average peak load above 300 H. P. The fire load coming on during the peak shall not be considered by the Power Company, but under such conditions the City shall throw off all power possible

so as to reduce it to the minimum, and the City to agree to cut off all motors which they are now operating in the City and not to take on any more. On motion the agreement was accepted by Council, and the Mayor was requested to have it drawn up in writing. No other business, Council adjourned.

Y. C. Rust, Clerk."

After hearing the case the court passed an interlocutory order denying the injunction, on the ground that it had not been shown that the contract relied upon by the city was binding on the defendant, as the original contract was between the city and a former company, to wit, the defendant's predecessor in title, and no legal merger of this former company and the defendant company had been shown. To this order or judgment the city excepted.

*Pope & Bennet* and *James Tift Mann,* for plaintiff.

*Robert C. & Philip H. Alston* and *Milner & Farkas,* for defendant.

BECK, P. J. (After stating the foregoing facts.)

1. The court below properly held that there was no consolidation or merger of the two corporations, the Albany Power & Manufacturing Co. and Georgia-Alabama Power Co. The instrument in writing introduced in the case, whereby the first-named party undertook to convey all of its property, that is, all of its realty and personalty, contracts, franchise, etc., was a deed of conveyance. It is evidence of a sale, and completed the sale and transfer of the property of the Albany Power Co. to the Georgia-Alabama Power Co. There were no extraneous facts in evidence that required the trial judge hearing this case to find that the instrument was other than what it purports to be, a deed of conveyance; and we do not enter upon a discussion of the question as to whether or not such a conveyance as this might be shown to be a merger and consolidation of the two corporations by aliunde evidence tending to show that the grantee of the deed actually absorbed the grantor, or that the two were fused into a complete union. In so far as the evidence in this case shows, the Albany Power Co. still maintains its corporate entity. In the case of *State* v. *Atlantic & Gulf R. Co.,* 60 *Ga.* 268, it is said by this court that there may be a merger or con-

solidation of corporations in the following ways: "First, by merger, or the extinction of one corporation, and the absorption of its stock, assets, etc., by the other; . . second, by coalescence, or the vital union of the two corporations, neither being extinguished, but their existence becoming joint and ceasing to be several. [Chief Justice Bleckley, delivering the opinion, said that there may be examples of this last mode, but he was unable at the time to cite any.] Third, by vital succession, or the extinction of both original corporations and the creation of a new one." We do not think that under the rule here stated the present case falls under any one of the three ways in which a merger or consolidation of two corporations can be accomplished; and especially do we so conclude from the decision in the case of *Hawkins* v. *Central of Georgia Ry. Co.*, 119 *Ga.* 159 (46 S. E. 82). In that case it was said: "Where there has been no sale, but a merger, and no provision made for the payment of the debts of the absorbed company, the consolidated corporation is liable for the debts of the former, at least to the extent of the value of the property received. But where there has been a lawful and absolute sale of a railroad, the grantee is not responsible for the existing debts of the grantor." The character of the transaction in the case of Hawkins v. R. R. Co., supra, held to be a sale and not a merger, is shown by the allegations of the petition and the portions of the deed set forth in the petition and as an exhibit thereto. The petition in that case alleged that on May 16, 1901, the Chattanooga company sold to the Central company, and made a deed (a copy of which was attached as an exhibit) conveying to it all of the railroad, real estate, personal property, rights, privileges, and franchises of, or belonging to, or thereafter to be acquired by the Chattanooga company; the consideration, according to the recitals in the deed, being $1,300,000 in fifty-year four per cent. gold bonds of the Central company, " the assumption by the Central company of the current liabilities of the Chattanooga company," and the payment of $5 in cash. It appears from the deed that the sale was made subject to mortgages for $2,743,000 on the property of the Chattanooga company. It was alleged that " petitioner's claim for damages, under said deed and the agreement of consolidation in pursuance of which it was made, is covered in said deed, and . . the Central Railway

Company is directly liable to him for damages;" that "after said deed was made and delivered the Central . . company took possession of said Chattanooga . . company's entire line of railway," and of all its assets, both real and personal, "and took over also all the franchises of said Chattanooga . . company, and are now in possession of the same, operating said line of railway;" that "said Chattanooga . . company has gone out of existence; it has no line of railroad, no visible property of any kind, and has ceased to do business, having yielded up to the Central . . company all its property, franchises, and rights, and it has no organization, no officers or agents, in the State of Georgia or elsewhere, so far as petitioner can find out, or so far as he is advised and believes." The defendant filed a demurrer, and this was sustained. In the opinion which affirmed the judgment of the court below it was said: "It was held (102 *Ga.* 443), that 'where a consolidation actually takes place between two companies under a written contract providing for the absorption of the one by the other, but making no provision for liabilities against the company which goes out of existence, these liabilities by operation of law become binding upon the new company to the extent of the assets of the absorbed company, or to the extent of the latter's ability to perform the contracts out of which such liability arose.' See also Morrison *v.* American Snuff Co., 79 Miss. 598, and note in 89 Am. St. Rep. 598. But this is not such a case. Here there was no merger, but an absolute sale, and the purchase-price was paid. There is no suggestion of any fraud or attempt to hinder, delay, or defeat the creditors of the Chattanooga company; no allegation that the price paid was less than the value of the property bought." Numerous other cases closely analogous to the present case could be cited, showing that the sale by the Albany Power Company of all its property was not a merger of that company with the defendant in this case, but we deem it unnecessary. See, in this connection, 5 Thompson on Corp. (2d ed.) §§ 6038, 6040, 6044, 6090, 6093, and cases cited under these sections; 10 Cyc. 308; 7 R. C. L. 183; also the case of Vicksburg etc. Tel. Co. *v.* Citizens Tel. Co., 79 Miss. 341 (30 So. 725, 89 Am. St. R. 656).

2. There being no merger nor consolidation of the companies,

the trial court was right in holding that the defendant in the case was not bound by the contract originally entered into between the City of Albany and the Albany Power & Mfg. Co., especially under the facts of the case. We will not stop to discuss whether or not, if there had not been a contract between the City of Albany and the Albany Power Company as to the terms upon which electrical power was to be furnished subsequently to the original contract entered into between these two parties in the year 1904, the Georgia-Alabama Power Co. could be liable to carry out the terms of the original contract because of the fact that under the deed of conveyance it purchased the " contracts " of the Albany Power Co.; for there was a modification of that original contract, or an attempted modification by the subsequent contract entered into between the mayor and council and the Albany Power Co. Even if the last contract between the city and the power company was not adopted with all the formalities and its execution attended with all the necessary formalities and solemnities, in substance it was in form substantially a contract between the parties and somewhat in the nature of an interpretation and modification of the original contract, and was treated and recognized by both parties as a contract for several years and up to the date of the sale effected by the execution of the deed hereinbefore referred to. And if the Georgia-Alabama Power Co. took over the contracts of the Albany Power Co. under such circumstances as to make it liable under the terms of those contracts, it seems clear that it would be bound by the terms of the contract as the two parties to the deed understood them to be. Even where there is a difference of intention between the parties to a contract, the meaning placed on the contract by one party and known to be thus understood by the other party at the time shall be held as the true meaning. Civil Code, § 4267. So far as concerns the present case the judge below could well have found, if indeed he was not compelled to find, that the contract for the furnishing of electric power to the city, which the Albany Power Company sold and the Georgia-Alabama Power Co. bought, was the contract as modified or interpreted by the contract of 1909.

3. Nor did the court below err in holding that the Georgia-Alabama Power Co. is not estopped from denying that it was

bound to continue to fulfill the contract, on the ground that it had furnished power under the contract for a number of years, or that it had thereby adopted and ratified the contract and was therefore bound by its terms. The judge was fully authorized to find, under the evidence, that the only contract the defendant had ratified and adopted or performed was the contract of 1909; and that could not be an adoption or performance according to the terms of the original contract.

4. The motion to dismiss on the ground that the questions involved are moot is overruled, as the showing that the questions are moot fails to show that they are completely so.

*Judgment affirmed. All the Justices concur.*